IN THE UNITED STATES DISTRICT COURT
FOR THE DISTRICT OF COLORADO

Civil Action No. 08-cv-02522-REB-KMT

CHRISTOPHER E. STONE, for himself and similarly situated employees,

      Plaintiff,

v.

LOCKHEED MARTIN CORPORATION, a Maryland corporation,
ROBERT J. STEVENS, individually, and in his official capacity as President/CEO,
BRENT THODEN, individually, and in his official capacity as Manager,
J. MICHAEL CONLEY, individually, and in his official capacity as Manager,
MICHAEL KEYACK, individually, and in his official capacity as Manager,
ALICE ELDRIDGE, individually, and in his official capacity as Ethics VP,
TERRY JEFFERSON, individually, and in his official capacity as HR Manager,
FRANCINE LESSARD, individually, and in his official capacity as EEO Director,
GRANT CASSLEBERRY, individually, and in his official capacity as Sr. Manager,
WANDA HUNTER, individually, and in his official capacity as EEO Manager, and
MAX BEAL, individually, and in his official capacity as HR Manager,

      Defendants.

---

### RECOMMENDATION OF UNITED STATES MAGISTRATE JUDGE

---

**Magistrate Judge Kathleen M. Tafoya**

      This case involves claims that Defendants discriminated and retaliated against him.  This matter is before the court on "Defendant Lockheed Martin Corporation's Motion to Dismiss" (Doc. No. 31, filed January 21, 2009).

**STATEMENT OF THE CASE**

The following facts are taken from Plaintiff's Complaint and the parties' submissions with respect to this Recommendation.  Plaintiff states he began work for Lockheed Martin Corporation ("LMC") in November 2005 as a systems engineer and was employed by LMC until May 28 or 29, 2008, at which time he was laid off.  (Compl. and Demand for Jury Trial ¶¶ 4, 30, 96–97 [hereinafter "Compl."] [filed November 18, 2008].)  Plaintiff initially was employed in Fort Worth, Texas.  (*Id.*, ¶ 4.)  In January and February 2008, Plaintiff took Family Medical Leave Act ("FMLA") leave.  (*Id.*, ¶ 56.)  He returned from FMLA leave on March 1, 2008, at LMC's offices in Colorado Springs.  (*Id.*, ¶ 4.)  Plaintiff asserts that he received a letter from LMC dated May 13, 2008, in which he was informed he would be laid off on May 28, 2008.  (*Id.*, ¶ 91.)  Plaintiff states he received another letter from LMC dated May 14, 2008, in which he was advised he would be ineligible for rehire.  (*Id.*, ¶ 92.)

Plaintiff asserts forty-three claims for relief.  (*Id.* at 38–68.)  Plaintiff alleges that the defendants "engaged in an unlawful pattern or practice of employment discrimination and retaliation on the basis of veteran status and activity, disability, family leave, and other bases."  (*Id.*, ¶ 1.)  Plaintiff further alleges that the defendants violated his contractual rights, rights to compensation under the Colorado Wage Claim Act, and also committed tortious acts.  (*Id.* ¶ 2.)  Plaintiff seeks money damages relief, injunctive relief, and declaratory relief.  (*Id.* at 71–75.)

Defendant Lockheed Martin Corporation ("LMC") moves to dismiss Plaintiff's Complaint on the bases that (1) the Complaint fails to set forth a short and plain statement of

entitlement to relief; and (2) the Complaint fails to state a claim upon which relief can be granted.  (Def. LMC's Mot. to Dismiss [hereinafter "Mot."] [filed January 21, 2009].)

## PROCEDURAL HISTORY

Plaintiff filed his Complaint on November 11, 2008.  (Compl.)  Defendant LMC filed its motion to dismiss on January 21, 2009.  (Mot.)  Plaintiff filed his response on February 1, 2009.  (Pl.'s Opp'n and Resp. to Defs'. [sic] Mot. to Dismiss & Mot. for Hr'g [hereinafter "Resp."].)  Defendant filed its reply on February 17, 2009.  (Def. LMC's Reply in Supp. of Mot. to Dismiss [hereinafter "Reply"].)  This motion is ripe for review and recommendation.

## STANDARD OF REVIEW

### 1.    Pro Se *Plaintiff*

Plaintiff is proceeding *pro se*.  The court, therefore, "review[s] his pleadings and other papers liberally and hold[s] them to a less stringent standard than those drafted by attorneys." *Trackwell v. United States*, 472 F.3d 1242, 1243 (10th Cir. 2007) (citations omitted).  *See also Haines v. Kerner*, 404 U.S. 519, 520-21 (1972) (holding allegations of a *pro se* complaint "to less stringent standards than formal pleadings drafted by lawyers").  However, a *pro se* litigant's "conclusory allegations without supporting factual averments are insufficient to state a claim upon which relief can be based."  *Hall v. Bellmon,* 935 F.2d 1106, 1110 (10th Cir. 1991).  A court may not assume that a plaintiff can prove facts that have not been alleged, or that a defendant has violated laws in ways that a plaintiff has not alleged.  *Associated Gen. Contractors of Cal., Inc. v. Cal. State Council of Carpenters*, 459 U.S. 519, 526 (1983).  *See also Whitney v. New Mexico*, 113 F.3d 1170, 1173–74 (10th Cir. 1997) (court may not "supply additional factual

allegations to round out a plaintiff's complaint"); *Drake v. City of Fort Collins*, 927 F.2d 1156, 1159 (10th Cir. 1991) (the court may not "construct arguments or theories for the plaintiff in the absence of any discussion of those issues").  The plaintiff's *pro se* status does not entitle him to application of different rules.  *See Montoya v. Chao*, 296 F.3d 952, 957 (10th Cir. 2002).

**2.       *Lack of Subject Matter Jurisdiction***

Federal Rule of Civil Procedure 12(b)(1) empowers a court to dismiss a complaint for "lack of jurisdiction over the subject matter."  Fed. R. Civ. P. 12(b)(1) (2008).  Dismissal under Rule 12(b)(1) is not a judgment on the merits of a plaintiff's case, but only a determination that the court lacks authority to adjudicate the matter.  *See Castaneda v. INS*, 23 F.3d 1576, 1580 (10th Cir. 1994) (recognizing federal courts are courts of limited jurisdiction and may only exercise jurisdiction when specifically authorized to do so).  A court lacking jurisdiction "must dismiss the cause at any stage of the proceeding in which it becomes apparent that jurisdiction is lacking."  *Basso v. Utah Power & Light Co.*, 495 F.2d 906, 909 (10th Cir. 1974).  A Rule 12(b)(1) motion to dismiss "must be determined from the allegations of fact in the complaint, without regard to mere conclusory allegations of jurisdiction."  *Groundhog v. Keeler*, 442 F.2d 674, 677 (10th Cir. 1971).  The burden of establishing subject matter jurisdiction is on the party asserting jurisdiction.  *See Basso*, 495 F.2d at 909.  Accordingly, Plaintiff in this case bears the burden of establishing that this court has jurisdiction to hear his claims.

**3.       *Failure to State a Claim Upon Which Relief Can Be Granted***

Federal Rule of Civil Procedure 12(b)(6) provides that a defendant may move to dismiss a claim for "failure to state a claim upon which relief can be granted."  Fed. R. Civ. P. 12(b)(6)

(2007).  "The court's function on a Rule 12(b)(6) motion is not to weigh potential evidence that the parties might present at trial, but to assess whether the plaintiff's complaint alone is legally sufficient to state a claim for which relief may be granted."  *Dubbs v. Head Start, Inc.*, 336 F.3d 1194, 1201 (10th Cir. 2003) (citations and quotation marks omitted).

"A court reviewing the sufficiency of a complaint presumes all of plaintiff's factual allegations are true and construes them in the light most favorable to the plaintiff."  *Hall v. Bellmon*, 935 F.2d 1006, 1198 (10th Cir. 1991).  "To survive a motion to dismiss, a complaint must contain sufficient factual matter, accepted as true, to 'state a claim to relief that is plausible on its face.'"  *Ashcroft v. Iqbal*, ___ U.S. ___, 129 S. Ct. 1937, 1949 (2009) (citing *Bell Atlantic Corp. v. Twombly*, 550 U.S. 544, 570 (2007)).  Plausibility, in the context of a motion to dismiss, means that the plaintiff pled facts which allow "the court to draw the reasonable inference that the defendant is liable for the misconduct alleged."  *Id.*  The *Iqbal* evaluation requires two prongs of analysis.  First, the court identifies "the allegations in the complaint that are not entitled to the assumption of truth," that is, those allegations which are legal conclusion, bare assertions, or merely conclusory.  *Id.* at 1949–51.  Second, the Court considers the factual allegations "to determine if they plausibly suggest an entitlement to relief."  *Id.* at 1951.  If the allegations state a plausible claim for relief, such claim survives the motion to dismiss.  *Id.* at 1950.

Notwithstanding, the court "need not accept conclusory allegations without supporting factual averments."  *Southern Disposal, Inc., v. Texas Waste*, 161 F.3d 1259, 1262 (10th Cir. 1998).  "[T]he tenet that a court must accept as true all of the allegations contained in a

complaint is inapplicable to legal conclusions.  Threadbare recitals of the elements of a cause of action, supported by mere conclusory statements, do not suffice." *Iqbal*, 129 S. Ct. at 1940. Moreover, "[a] pleading that offers 'labels and conclusions' or a formulaic recitation of the elements of a cause of action will not do.  Nor does the complaint suffice if it tenders 'naked assertion[s]' devoid of 'further factual enhancement.'" *Id.* at 1949 (citation omitted).  "Where a complaint pleads facts that are 'merely consistent with' a defendant's liability, it 'stops short of the line between possibility and plausibility of 'entitlement to relief.''" *Iqbal*,129 S. Ct. at 1949 (citation omitted).

## ANALYSIS

*1.      Exhaustion of Administrative Remedies*

As a preliminary matter, the court must address jurisdiction in this case.  Defendant did not raise this argument.  However, the Tenth Circuit has viewed exhaustion of remedies as a jurisdictional requirement.  *See Jones v. Runyon*, 91 F.3d 1398, 1400 n.1 (10th Cir. 1996) (discussing Tenth Circuit authority that exhaustion of remedies is a jurisdictional requirement in some circumstances).  Exhaustion of administrative remedies is a jurisdictional prerequisite to suit under Title VII and under the Age Discrimination in Employment Act ("ADEA").  *Shikles v. Sprint/United Mgmt. Co.*, 426 F.3d 1304, 1317 (10th Cir. 2005) ("[A] plaintiff's exhaustion of his [ ] administrative remedies is a jurisdictional prerequisite to suit [ ]—not merely a condition precedent to suit.").  Similarly, under Title I of the Americans with Disabilities Act ("ADA"), "[A] plaintiff must exhaust [his] claims before the EEOC as a prerequisite to federal court jurisdiction over [his] ADA claims." *MacKenzie v. City & County of Denver*, 414 F.3d 1266,

1274 (10th Cir. 2005) (citing *Jones v. UPS, Inc.*, 502 F.3d 1176, 1183 (10th Cir.2007)).  Finally, the Rehabilitation Act also encompasses this exhaustion requirement.  *Woodman v. Runyon*, 132 F.3d 1330, 1342 (10th Cir. 1997).  Therefore, for certain of Plaintiff's claims, the court must address exhaustion of remedies before it may address the merits of the claims.  *See Cudjoe v. Independent Sch. Dist. No. 12*, 297 F.3d 1058, 1063(10th Cir. 2002).  "[A] discrimination claim may not be filed in federal court before administrative remedies have been exhausted."  *Brown v. Hartshorne Public School Dist. No. 1*, 864 F.2d 680, 682 (10th Cir. 1988).  "[A] plaintiff must obtain a right to sue letter from the EEOC as a prerequisite to suit."  *Shikles*, 426 F.3d at 1310.

Plaintiff clearly states in his Complaint that he filed an administrative charge of Defendants' alleged unlawful employment practices with the EEOC on March 21, 2008, but that the "EEOC has not issued a 'Right to Sue' letter . . . ."  (Compl., ¶¶ 22–23.)  Accordingly, as it is clear Plaintiff did not exhaust his administrative remedies, Plaintiff's claims asserted under Title VII, the ADA, the ADEA, and the Rehabilitation Act (Counts 5, 6, 7, 9, 10, 12, 13, 15, 16, and 18) are therefore properly dismissed for lack of subject matter jurisdiction.  The court need not address Defendant's arguments on the merits related to these claims.

2.      ***Uniformed Services Employment and Reemployment Rights Act of 1994 ("USERRA") Claims***

Plaintiff has asserted claims for discrimination and retaliation under the USERRA. (Compl. at 38–40.)  Plaintiff generally alleges he was harassed, discriminated against, and deprived employment benefits because of his prior military service and because of his extracurricular activities as veterans' advocate.  (*Id.*, ¶¶ 69–70, 74–81, 87-88, 92, 123–131.)

7

USERRA was enacted to protect the rights of veterans and members of the uniformed services. *Quick v. Frontier Airlines, Inc.*, 544 F. Supp. 2d 1197, 1206–1207 (D. Colo. 2008). USERRA prohibits employers and prospective employers from discriminating and retaliating against service members based on either their military service or their assertion of entitlement to rights under USERRA. *See* 38 U.S.C. § 4311(a), (b). "Because of USERRA's compelling purpose, 'it must be broadly construed in favor of its military beneficiaries.'" *Quick*, 544 F. Supp. 2d at 1207 (quoting *Hill v. Michelin N. Am., Inc.*, 252 F.3d 307, 313 (4th Cir.2001)).

Section 4311(b) of USERRA provides:

> An employer may not discriminate in employment against or take any adverse employment action against any person because such person (1) has taken an action to enforce a protection afforded any person under this chapter, (2) has testified or otherwise made a statement in or in connection with any proceeding under this chapter, (3) has assisted or otherwise participated in an investigation under this chapter, or (4) has exercised a right provided for in this chapter.

38 U.S.C. § 4311(b). Section 4311(b) does not use the term "retaliation." However, the essence of the subsection is to prohibit adverse action taken in retaliation for involvement in the assertion of the substantive rights established by USERRA. *Quick*, 544 F. Supp. 2d at 1208 (citing *Wallace v. City of San Diego*, 479 F.3d 616, 625 n.1 (9th Cir. 2007)).

An employer will be considered to have violated the USERRA if it terminates an employee and the employee's

> membership, application for membership, service, application for service, or obligation for service in the uniformed services is a motivating factor in the employer's action, unless the employer can prove that the action would have been taken in the absence of such membership, application for membership, service, application for service, or obligation for service[.]

8

*Id.* § 4311(c)(1).

The employee "'bear[s] the initial burden of showing by a preponderance of the evidence that [his or her] military service was a substantial or motivating factor in the adverse employment action.'" *Lewis v. Rite of Passage, Inc.*, 217 Fed. App'x 785, 786 (10th Cir. 2007) (quoting *Sheehan v. Dep't of Navy*, 240 F. 3d 1009, 1013 (Fed. Cir. 2001). Once the plaintiff meets his initial burden, "'the burden shifts to the employer to prove the affirmative defense that legitimate reasons, standing alone, would have induced the employer to take the same adverse action.'" *Id.* (quoting *Sheehan*, 240 F.3d at 1014).

One essential matter that the plaintiff must demonstrate to meet its burden is that he was engaged in a protected activity under USERRA that would trigger its protections. *Smith v. Lighting*, No. Civ.A.1:97CV239-D-D, 1998 WL 527307, at *2 (N.D. Miss. Aug. 5, 1998). The question, therefore, becomes whether the plaintiff was "performing military service." The USERRA defines "service in the uniformed services" as

> the performance of duty on a voluntary or involuntary basis in a uniformed service under competent authority and includes active duty, active duty for training, initial active duty for training, inactive duty training, full-time National Guard duty, a period for which a person is absent from a position of employment for the purpose of an examination to determine the fitness of the person to perform any such duty, and a period for which a person is absent from employment for the purpose of performing funeral honors duty

38 U.S.C. § 4303(13). The sole inquiry under USERRA is whether the employee was performing a military duty under competent authority. *Moore v. Epperson Underwriting Co.*, 2007 WL 2332755, at *11 (D. Minn. Aug. 15, 2007).

9

In this case, it is undisputed that Plaintiff was "an honorably discharged disabled U.S. military veteran of Desert Storm due [to] service in the U.S. Air Force from 1989 to 1997 . . . ." (Compl., ¶ 3.)  It is also undisputed that Plaintiff was hired by LMC approximately eight years after his discharge from the military.  There is no factual averment in the Complaint that Plaintiff, during the time he was employed by LMC, was performing military duty or service under any competent authority.  Plaintiff's veterans' advocacy work is not statutorily protected under USERRA.  Moreover, this court is unable to locate <u>any</u> cases in which USERRA benefits under § 4311(b) have been extended as a blanket protection for a veteran who is not continuing his military service in <u>some</u> capacity, e.g. as a national guardsman or reservist.  Plaintiff has not alleged he has continued "military service" under competent authority in <u>any</u> capacity.  Therefore, this court finds that "the activities for which the plaintiff charges he was terminated do not constitute 'the performance of duty . . . in a uniformed service' protected by USERRA.  *See Lighting*, 1998 WL 527307, at *4.  Accordingly, Plaintiff's USERRA claims are properly dismissed.

### 3.      *FMLA Claims*

Plaintiff asserts claims for interference and retaliation under the FMLA.  (Compl. at 40–41.)  Claims for interference and retaliation under the FMLA may be pleaded in the alternative, or the plaintiff may seek recovery under both theories.  *See, e.g. Campbell v. Gambro Healthcare, Inc.*, 478 F.3d 1282 (10th Cir. 2007).  Plaintiff's Complaint is not a model of clarity.  The court, therefore, has reviewed the entire Complaint to cull the following facts it appears are related to Plaintiff's FMLA claims.  Plaintiff states that in November 2006, as a full-

time employee of LMC employed for over one year, he "became and remained eligible for

FMLA benefits" at LMC.  (*Id.*, ¶ 35.)  Plaintiff alleges that Defendants interfered with his FMLA

rights "by a policy of treating FMLA leave as 'negative hours' and demanding employees work

overtime to compensate for such leave taken during FMLA."  (*Id.*, ¶ 44.)  Plaintiff alleges:

> Prior to his January-February 2008 FMLA leave, Plaintiff and [Defendants] falsely promised and agreed Plaintiff would continue his current project work remotely from Colorado upon return from family leave, rather than continue working from the Texas work site.  DEFENDANTS misrepresented this work arrangement promise to Plaintiff and concealed their actual intention to remove Plaintiff's job while Plaintiff would be vulnerable on family leave. DEFENDANTS further misrepresented and falsely promised that Plaintiff would be protected by DEFENDANTS' compliance with the FMLA, including that of protecting Plaintiff's job while on family leave.

(*Id.*, ¶ 55.)  Plaintiff states he took leave from early January 2008 to March 1, 2008, to care for a

parent with a serious health condition and for the birth of his first child.  (*Id.*, ¶ 56.)  Plaintiff

alleges that "during [his] 2008 FMLA leave, DEFENDANTS removed Plaintiff from his job"

and "from January to February 2008, DEFENDANTS . . . interfered with, denied, restrained, and

retaliated against Plaintiff's rights, benefits, and exercise of rights under the FMLA . . . ."  (*Id.*,

¶¶ 57–58.)  Plaintiff contends that beginning on about March 1, 2008, when he returned from

FMLA leave at a new workplace, Defendants "willfully failed to restore, and failed to disclose

an offer of same to, Plaintiff to the same or equivalent position he held previous to his FMLA

leave."[1]  (*Id.*, ¶ 61–62.)  Plaintiff states on March 5, 2008, he filed a complaint with the

Department of Labor regarding Defendants' violations of FMLA laws.  (*Id.*, ¶ 64.)  Plaintiff

---

[1]This, of course, is a conclusory assertion, not a factual averment, that is not entitled to a presumption of truth. *See Iqbal*, 129 S. Ct. at 1949–51.

alleges that instead of "redress," Defendants "increased retaliations against Plaintiff . . . " (*Id.*, ¶ 64.)  Plaintiff states he made notified Defendants and made several more complaints regardung Defendants' alleged retaliation and discrimination.  (*Id.*, ¶¶ 76, 76, 78, 83, 84, 86.)

Plaintiff states he was "permanently suspended . . . access to company premises, coworkers, and computer resources" after he "exercised his rights and job duties by emailing to other employees a 5/1/2008 email on worker rights available to veterans . . . ." (*Id.*, ¶ 87.)  In addition, Plaintiff was informed by Defendant that their Corporate Ethics Office had opened an investigation into Plaintiff's email dissemination.  (*Id.*, ¶ 88.)  Plaintiff alleges the results of the investigation were concealed.  (*Id.*)  Plaintiff states he was informed in a May 13, 2008, letter that he would be laid off on May 28, 2008.  (*Id.*, ¶ 91.)  Plaintiff alleges the letter informed him he would be ineligible for rehire.  (*Id.*)  The letter also "falsely concluded Plaintiff's guilt in three retaliatory allegations/investigations" and accused him of insubordination.  (*Id.*)  Plaintiff includes in his complaint excerpts from a letter dated May 14, 2008, that he received from Defendants addressing Plaintiff's complaints, the investigation conducted by the Office of Ethics and Business Conduct, and the fact that Defendant chose not to discipline Plaintiff but did elect to deem him ineligible for rehire as a result of the issues.  (*Id.*, ¶ 92.)  Plaintiff states his actual date of termination was May 29, 2009, which was his last date of pay.  (*Id.*, ¶ 96.)

### A.    *Interference Claim*

To establish an interference claim, Plaintiff must show: (1) that he was entitled to FMLA leave, (2) that some adverse action by the employer interfered with his right to take FMLA leave, and (3) that the employer's action was related to the exercise or attempted exercise of his FMLA

rights.  *Campbell*, 478 F.3d at 1287.  Here, Plaintiff has alleged—and it is undisputed—that he

was entitled to FMLA leave, thus satisfying the first prong.  (*See* Compl, ¶ 35).

      To satisfy the second element of an interference claim, "the employee must show that

[he] was prevented from taking the full 12 weeks' [ ] leave guaranteed by the FMLA, denied

reinstatement following leave, or denied initial permission to take leave."  *Campbell*, 478 F.3d at

1287.  Plaintiff has failed to allege any facts that satisfy the second prong.  Nowhere in

Plaintiff's Complaint does he allege he was prevented from taking the leave guaranteed by the

FMLA.  Plaintiff does state that he took leave from early January 2008 to March 1, 2008

(Compl., ¶ 56), less than the twelve weeks guaranteed by the FMLA.  However, Plaintiff does

not allege that the defendants prevented him from taking leave for a longer period of time.

Plaintiff also fails to allege he was denied reinstatement and concedes that he upon return from

FMLA leave on March 1, 2008, he returned to work as a Systems Engineer Senior Staff, the

same position he held prior to taking the leave.  (*Id.*, ¶¶ 4, 55, 61.)  Although Plaintiff alleges

that "during [his] 2008 FMLA leave, DEFENDANTS removed Plaintiff from his job" (*id.*, ¶ 57),

he also states that he and the defendant agreed, prior to his taking FMLA leave, "that Plaintiff

would continue his current project work remotely from Colorado upon return from family leave,

rather than continue working from the Texas work site" (*id.*, ¶ 55).  Additionally, Plaintiff

concedes that the Texas duty assignment was temporary (*id.*, ¶ 30).  Thus, Plaintiff has failed to

satisfy the second prong.

      To establish the third prong of an interference claim, a plaintiff must allege that there is a

causal connection between an adverse employment action and the exercise or attempted exercise

of plaintiff's FMLA rights. *Metzler v. Federal Home Loan Bank of Topeka*, 464 F.3d 1164, 1180–81 (10th Cir. 2006). An employee taking FMLA leave "has no greater protection against his or her employment being terminated for reasons not related to his or her FMLA request than he or she did before submitting the request and has no greater rights than an employee who remains at work." *Satterlee v. Allen Press, Inc.*, 274 Fed. App'x 642, 645 (10th Cir. 2008) (internal quotations omitted) (citing *Gunnell v. Utah Valley State College*, 152 F.3d 1253, 1262 (10th Cir. 1998)). "Thus, an employee who is entitled to FMLA leave may nevertheless be terminated if there is no causal connection between the termination and her rights under the FMLA." *Id.* Moreover, a reason for termination that is "insufficiently related to FMLA leave will not support recovery under an interference theory." *Smith v. Diffee Ford-Lincoln-Mercury, Inc.*, 298 F.3d 955, 961 (10th Cir. 2002); *McBride v. CITGO Petroleum Corp.*, 281 F.3d 1099, 1108 (10th Cir. 2002) (FMLA does not protect employees from dismissal based on reasons unrelated to the FMLA).

Plaintiff makes conclusory statements that the defendants "willfully violated the FMLA" by

> failing to restore Plaintiff to the same or equivalent position he occupied prior to FMLA leave . . . ; harassed, intimidated, denied, restrained, and interfered with Plaintiff's FMLA rights because of his request to care for his family, his authorized family leave, and his FMLA complaints to [Defendant] and government . . . ; interfered with, restrained and denied the exercise of Plaintiff's other rights and benefits provided by FMLA . . . ; failed to provide notice to Plaintiff of his right to substitute paid leave during family leave; and failed to responsively answer questions about Plaintiff's rights under the FMLA.

(Compl., ¶ 133.)  Obviously, these conclusory statements are not entitled to any presumption of truth.  *Iqbal*, 129 S. Ct. at 1949–51.  Plaintiff's Complaint also contains what he considers to be relevant portions of Defendant's May 13 and 14, 2008, letters to Plaintiff.  (*See id.* at 27–29.) Plaintiff states the May 13, 2008, letter "concluded Plaintiff's guilt" in three investigations, including one for subordination.  (*Id.* at 27.)  The May 14, 2008, letter stated the "Office of Ethics and Business Conduct has conducted a thorough investigation of your issues."  (*Id.* at 28.) The letter listed several reasons for the defendant's decision to make Plaintiff ineligible for rehire, including the fact that Plaintiff "took it upon [himself] to circumvent controls in place on email distribution lists and sent [his] presentation [advocating for veteran's rights] to approximately 37,000 employees . . . . a gross misuse of the company's computing and e-mail systems, but [containing] serious inaccuracies which has caused great concern by employee veterans and others."  (*Id.*)  Defendant further informed the plaintiff that it was aware that Plaintiff "used company time to create and send these multiple mailings and respond to employees" instead of following HR's directions to be at work and using his time to look for his next job.  (*Id.*)  Defendant also stated, "on the day that you sent these messages, you left work without notice.  This is unacceptable behavior."  (*Id.*)  Defendant continued, "You violated [the conflict of business interest policy] by failing to report [ownership of a small business, which was previously unknown and unreported to the company] either at the time of hire or anytime thereafter."  (*Id.*)  Finally, Defendant informed Plaintiff that while the company had elected not to assess discipline, Plaintiff would be ineligible for rehire as a result of the issues.  (*Id.*)

Plaintiff fails to allege a causal connection between his termination and his taking FMLA leave.  Through his own Complaint he has established that his employment would have been terminated and that he would not have been eligible for rehire notwithstanding his alleged entitlement to FMLA leave.  Of importance is the fact that Defendant's May 13 and 14, 2008, letters contain no reference to Plaintiff's FMLA leave.  Plaintiff's Complaint "pleads facts that are 'merely consistent with' [the] defendant's liability," and "it 'stops short of the line between possibility and plausibility of 'entitlement to relief.'" *Iqbal,*129 S. Ct. at 1949.  This court cannot "draw the reasonable inference that the defendant is liable for the misconduct alleged" as to his FMLA interference claim.  *Id*.  Accordingly, Plaintiff's claim for interference under the FMLA is properly dismissed.

     **B.**    ***Retaliation Claim***

To establish a *prima facie* retaliation claim, Plaintiff must show: (1) he engaged in a protected activity; (2) the defendants took an action that a reasonable employee would have found materially adverse; and (3) there exists a causal connection between the protected activity and the adverse action.  *Campbell*, 478 F.3d at 1287.  A retaliation claim can be shown "when the employee successfully took FMLA leave, was restored to [his] prior employment status, and was adversely affected by an employment action based on incidents post-dating [his] return to work." *Id.*  "A causal connection is established where the plaintiff presents evidence of circumstances that justify an inference of retaliatory motive, such as protected conduct closely followed by adverse action."  *Garrett v. Hewlett-Packard Co.*, 305 F.3d 1210, 1221 (10th Cir. 2002) (citations omitted).

The first two elements of the *prima facie* case for retaliation are satisfied.  Plaintiff

engaged in a protected activity by taking FMLA leave, and defendant's decision to lay him off

and to make him ineligible for rehire was clearly an action that a reasonable employee would

have found to be materially adverse.  However, again, for same reasons as stated above, the

Plaintiff has failed to satisfy the element showing a causal connection between his taking FMLA

leave and his termination.  Accordingly, Plaintiff's FMLA retaliation claim is properly

dismissed.

**4.      State Law Claims**

The pretrial dismissal of all federal law claims—leaving only state law claims—generally

prevents the Court from reviewing the merits of the state law claims.  28 U.S.C. § 1367(c)(3);

*see also McWilliams v. Jefferson County*, 463 F.3d 1113, 1117 (10th Cir.2006); *Exum v. U.S.*

*Olympic Comm.*, 389 F.3d 1130, 1138-39 (10th Cir. 2004).  "It has consistently been recognized

that pendent jurisdiction is a doctrine of discretion, not a plaintiff's right.  Its justification lies in

considerations of judicial economy, convenience and fairness to litigants; if these are not present

a federal court should hesitate to exercise jurisdiction over state claims . . . . [c]ertainly, if the

federal claims are dismissed before trial . . . the state claims should be dismissed as well."

*United Mine Workers of America v. Gibbs*, 383 U.S. 715, 726 (1966).  Dismissal of Plaintiff's

federal claims extinguishes the basis for federal subject matter jurisdiction.  Plaintiff's remaining

claims rest on distinct issues of Colorado law and would best be determined by a Colorado state

court.  Accordingly, it is recommended that the District Court also decline to exercise

jurisdiction over Plaintiff's remaining claims, and that the state claims be dismissed without prejudice.

WHEREFORE, for the foregoing reasons, the court respectfully

**RECOMMENDS** that "Defendant Lockheed Martin Corporation's Motion to Dismiss" (Doc. No. 31) be GRANTED as follows:

1.      Plaintiff's claims asserted under Title VII, the ADA, the ADEA, and the Rehabilitation Act (Counts 5, 6, 7, 9, 10, 12, 13, 15, 16, and 18) be dismissed for lack of subject matter jurisdiction;

2.      Plaintiff's claims asserted under USERRA be dismissed with prejudice for failure to state a claim upon which relief can be granted;

3.      Plaintiff's claims asserted under the FMLA be dismissed with prejudice for failure to state a claim upon which relief can be granted;

4.      Plaintiff's remaining claims asserted under Colorado law be dismissed without prejudice.

**ADVISEMENT TO THE PARTIES**

Within ten days after service of a copy of the Recommendation, any party may serve and file written objections to the Magistrate Judge's proposed findings and recommendations with the Clerk of the United States District Court for the District of Colorado.  28 U.S.C. § 636(b)(1); Fed. R. Civ. P. 72(b); *In re Griego*, 64 F.3d 580, 583 (10th Cir. 1995).  A general objection that does not put the District Court on notice of the basis for the objection will not preserve the objection for *de novo* review.  "[A] party's objections to the magistrate judge's report and

recommendation must be both timely and specific to preserve an issue for de novo review by the district court or for appellate review." *United States v. One Parcel of Real Property Known As 2121 East 30th Street, Tulsa, Oklahoma*, 73 F.3d 1057, 1060 (10th Cir. 1996).  Failure to make timely objections may bar *de novo* review by the District Judge of the Magistrate Judge's proposed findings and recommendations and will result in a waiver of the right to appeal from a judgment of the district court based on the proposed findings and recommendations of the magistrate judge.  *See Vega v. Suthers*, 195 F.3d 573, 579-80 (10th Cir. 1999) (District Court's decision to review a Magistrate Judge's recommendation *de novo* despite the lack of an objection does not preclude application of the "firm waiver rule");  *One Parcel of Real Property*, 73 F.3d at 1059-60 (a party's objections to the Magistrate Judge's report and recommendation must be both timely and specific to preserve an issue for *de novo* review by the District Court or for appellate review);  *International Surplus Lines Insurance Co. v. Wyoming Coal Refining Systems, Inc*., 52 F.3d 901, 904 (10th Cir. 1995) (by failing to object to certain portions of the Magistrate Judge's order, cross-claimant had waived its right to appeal those portions of the ruling); *Ayala v. United States*, 980 F.2d 1342, 1352 (10th Cir. 1992) (by their failure to file objections, plaintiffs waived their right to appeal the Magistrate Judge's ruling).  *But see, Morales-Fernandez v. INS*, 418 F.3d 1116, 1122 (10th Cir. 2005) (firm waiver rule does not apply when the interests of justice require review).

Dated this 25th day of June, 2009.

BY THE COURT:

Kathleen M. Tafoya
United States Magistrate Judge